# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRINCE PAUL RAYMOND WILLIAMS, | Case No. 1:25-cv-00957-JLT-SAB |
| Plaintiff, | ORDER SCREENING SECOND AMENDED COMPLAINT AND GRANTING <u>FINAL</u> LEAVE TO FILE THIRD AMENDED COMPLAINT |
| v. | |
| WESTLAKE FINANCIAL SERVICES, INC., et al., | (ECF No. 13) |
| Defendants. | **THIRTY-DAY DEADLINE** |

On September 22, 2025, Plaintiff Prince Paul Raymond Williams, who is proceeding *pro se* and *in forma pauperis*, commenced this action. (ECF No. 1.) On August 20, 2025, the Court granted Plaintiff's long form application to proceed *in forma pauperis*. (ECF Nos. 2, 7, 8.) During that time, Plaintiff filed a first amended complaint as a matter of course. (ECF No. 4.) Before the Court could screen the first amended complaint, however, Plaintiff moved for leave to amend to file a second amended complaint, which the Court granted. (ECF Nos. 11, 12.) Though with regard to the second amended complaint, the Court now undertakes its initial screening, pursuant to 28 U.S.C. § 1915.

**I.**

**SCREENING REQUIREMENT**

The *in forma pauperis* statute provides that a court shall dismiss a case if, *inter alia*, the complaint is "frivolous or malicious," or "fails to state a claim on which relief may be granted."

1  28 U.S.C. § 1915(e)(2).  In determining whether a complaint fails to state a claim, a court uses the
2  same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint need only
3  contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ."
4  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of
5  the elements of a cause of action, supported by mere conclusory statements, do not suffice."
6  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
7  555 (2007).

8  To survive screening, a plaintiff's claims must be facially plausible, which requires
9  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable
10 for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962,
11 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient,
12 and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the
13 plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

14 Moreover, federal courts are under a duty to raise and decide issues of subject matter
15 jurisdiction *sua sponte* at any time it appears subject matter jurisdiction may be lacking.  Fed. R.
16 Civ. P. 12; Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).  If the Court
17 determines that subject matter jurisdiction is lacking, the Court must dismiss the case.  Id.; Fed. R.
18 Civ. P. 12(h)(3).

19 Leave to amend may be granted to the extent that the deficiencies of the complaint can be
20 cured by amendment.  Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

21                                                          **II.**
22                                            **COMPLAINT ALLEGATIONS**

23 The Court accepts Plaintiff's allegations in his complaint as true for the purpose of this *sua*
24 *sponte* screening requirement under 28 U.S.C. § 1915.  However, the Court observes that the
25 second amended complaint is 130 pages long and at various times is convoluted and confusing.
26 Moreover, throughout Plaintiff makes various conclusory statements of fact and law.
27 Notwithstanding, the Court will endeavor to recite the relevant allegations.

28

In essence, this case involves the alleged repossession of a vehicle in Plaintiff's lawful possession. Plaintiff resides in Fresno County and entered into a credit sale for a motor vehicle though a retail installment sale contract ("RISC") that was originated and/or serviced by Defendant Westlake Financial Services, Inc. ("Westlake"). (ECF No. 13, p. 15.) Defendant Westlake is a California corporation that originates and services consumer auto finance contracts, furnishes credit information to consumer reporting agencies ("CRAs"), directs repossession activity, and communicates payoff and redemption terms to consumers. (Id. at p. 15.) Defendant Paul Kerwin is the Chief Financial Office of Defendant Westlake and oversaw Westlake's financial operations, including participating or ratifying polices related to repossession/redemption, transmittal of information to CRAs, and coordination with third-parties and law enforcement for repossession. (Id. at p. 17.) Defendant Paramount Recovery Services, LLC ("Paramount") is a California limited liability company that enforces security interest in motor vehicles through repossession, storage, and release. (Id. at p. 16.)

Plaintiff alleges that in March 2024, Westlake directed Paramount to repossess Plaintiff's vehicle in Fresno County. (Id. at p. 4.) Plaintiff states that Paramount coordinated with law enforcement in connection with repossession of Plaintiff's vehicle. (Id. at p. 16.) Plaintiff alleges that he made a "lawful and immediate payment effort to cure and redeem;" however, Defendants failed to provide a workable "same-day payment channel, refused lawful tender, executed a nonjudicial seizure without notice, and damaged the collateral while in their custody." (Id. at p. 5.) Plaintiff then alleges that Westlake "furnished inaccurate tradeline data to Experian, Equifax, and TransUnion . . . [and] verified the tradeline without a reasonable investigation, failed to correct inaccuracies, and failed to mark the account as disputed." (Id.) Plaintiff's credit score dropped and he suffered "credit denials and adverse actions." (Id.)

More specifically, Plaintiff alleges that on October 20, 2023, Plaintiff entered into a RISC to purchase a 2015 BMW 5 Series, advertised with a cash selling price of $10,999.00. (Id. at p. 20.) Plaintiff paid a $5,700 cash down payment at closing, "with additional '*Products & Fees*' of $328.25." (Id.) The RISC disclosed an amount financed of $8,201.44, a finance charge of $4,943.30, an APR of 28.99%, a 60-month term, and a total of payments of $13,144.74. (Id.)

1  Plaintiff relied on Defendant Westlake's tabular disclosures as complete and accurate.  (Id.)
2  Plaintiff alleges that the RISC and closing package did not clearly itemize or classify certain
3  charges.  (Id. at p. 21.)

4       In February 2024, Plaintiff had cash in the amount "sufficient to cure asserted arrears and
5  requested same-day written instructions from Westlake identifying a physical location or accepted
6  method to complete cash tender and obtain contemporaneous application and confirmation."  (Id.
7  at p. 21.)  On February 27, 2024, Westlake stated that cash was not accepted; during a
8  "contemporaneous call," Westlake advised Plaintiff that there was no physical location to accept
9  same-day cash payments.  (Id. at p. 22.)

10       On April 5, 2024, Westlake issued a payoff letter to Plaintiff indicating that if Plaintiff paid
11 $8,321.56 that day, and with a 15-day payoff quote of $8,417.22 at a per diem of $6.12, it would
12 satisfy Plaintiff's obligation.  (Id. at pp. 23-24.)  The payoff letter did not include an itemization
13 for administrative or storage fees.  (Id.)  On April 16, 2024, Plaintiff mailed a notice of tender to
14 Westlake, reiterating his offer to pay immediately with U.S. coin and currency; Westlake did not
15 acknowledge this notice.  (Id. at pp. 24-25.)  On March 27, 2024, Plaintiff alleges that Westlake
16 direct Defendant Paramount to repossess Plaintiff's vehicle. (Id. at p. 25.)  According to Plaintiff,
17 there was no prior written notice of default/right to cure or a notice of intent to sell.  (Id.)  The next
18 day, Plaintiff received an email from Paramount entitled Vehicle Redemption Appointment
19 Confirmation, advising Plaintiff that he could appear on March 29, 2024, for redemption.  (Id.)
20 The email instructed to bring a police receipt[1] and picture identification.  (Id.)

21       On March 28, 2024, Plaintiff paid Westlake $975.36 through an authorized electronic
22 payment (incurring a $5.00 processing fee).  (Id. at p. 23.)  This allowed Plaintiff to retrieve his
23 vehicle from Paramount, and Plaintiff observed that there was physical damage to the exhaust-

---

[1] Based on this fact, Plaintiff makes conclusory allegations that Paramount must have contacted the Fresno Police Department ("FPD") prior to or during the seizure request and that this "presence or engagement conferred apparent state authority and deterred resistance." (ECF No. 13, p. 27.)  While the Court accepts as true the allegation that an email directed Plaintiff to bring a police receipt, the Court rejects Plaintiff's conclusory allegations that Paramount contacted FPD as not meeting the plausibility pleading standard.  Indeed, Plaintiff has included the email from Paramount, which appears to be a form email. (Id. at p. 25.)  Relatedly, the Court does not necessarily accept Plaintiff legal conclusion(s) that by the FPD's mere presence, color of state authority was necessarily implicated. (See id. at pp. 27-28.)  That legal determination is for the Court to make, in light of all the non-conclusory allegations in the operative complaint.

1 mount assembly. (Id. at p. 26.) Plaintiff documented the damage and notified Westlake, who
2 acknowledged the notice and recommended Plaintiff file a claim with the repossession company.
3 (Id.) Following this payment, Plaintiff's account with Westlake reflected a temporary credit,
4 followed by administrative and storage fees without itemization. (Id. at p. 28.)

5 Thereafter, Plaintiff alleges that Westlake furnished tradeline data to Experian, Equifax,
6 and TransUnion reflecting late-payment statues and inflated balances that failed to account for
7 posted credits and redemption activity. (Id. at p. 28.) On January 10 and February 5, 2025,
8 Plaintiff states that he submitted "written disputes to one or more CRAs identifying specific
9 inaccuracies." (Id. at p. 29.) According to Plaintiff, the CRAs communicated with Westlake who
10 verified the "tradeline without conducting a reasonable investigation, failed to correct inaccuracies,
11 and did not flag the tradeline as 'disputed by customer' in its subsequent monthly Metro 2
12 furnishing." (Id.) Plaintiff's credit score fell 125 points. (Id.) In March and April 2025, Plaintiff
13 would receive credit denials and an adverse housing decision referencing the Westlake tradeline.
14 (Id. at p. 30.)

15 Much of the remaining 100 pages of the second amended complaint contain repeated
16 factual allegations, conclusory allegations of fact or law, legal definitions, and discussions of
17 statutes. Though the Court has reviewed these pages,[2] the Court will not discuss them in this
18 factual section, discussing any other relevant allegations as necessary below.

## III.

## DISCUSSION

21 Essentially, Plaintiff entered into a contract to purchase a vehicle. Following going into
22 arrears (the circumstances of which Plaintiff has not pleaded), Plaintiff tried to pay off his debt
23 before a repossession, but Defendant Westlake would not accept Plaintiff's same-day cash offer.
24 The Court infers that thereafter Plaintiff did not pay. Westlake then contacted Defendant
25 Paramount, who repossessed Plaintiff's vehicle. Paramount offered Plaintiff a vehicle redemption
26 option, and Plaintiff was able to make an electronic payment and received his vehicle back (with

---

[2] In particular to this screening order, the Court has reviewed the section where Plaintiff preemptively discusses "failure to state a claim." (ECF No. 13, pp. 92-93.)

1  alleged damage). Westlake then transmitted information noting Plaintiff had made late payments
2  and included an alleged inflated balance. Plaintiff disputed this with the CRAs. In turn, the CRAs
3  contacted Westlake who verified the information. This led to a drop in Plaintiff's credit score and
4  loss of credit opportunities.

Based on these essential facts, Plaintiff brings four federal causes of action, which the Court addresses.

### A.     Fair Credit Reproting Act

Congress enacted FCRA to ensure accurate reporting about the "credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." 15 U.S.C. § 1681(a)(2). Under FCRA, a consumer may request a copy of her credit report from TransUnion, Equifax, and Experian, the country's "Big Three" credit reporting agencies. TransUnion LLC v. Ramirez, 594 U.S. 413, 419 (2021); 15 U.S.C. § 1681g(a). If the consumer finds something amiss on the credit report, one option is to file a dispute with the credit reporting agency, which in turn notifies the entities that "furnished" information about the consumer's debt. 15 U.S.C. § 1681i(a).

FCRA regulates how furnishers must respond to a notice of dispute from a credit reporting agency. Gross v. CitiMortgage, Inc., 33 F.4th 1246, 1251 (9th Cir. 2022). Among other things, the furnisher must correct or delete inaccurate information after conducting an "investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b). That "investigation" must be at least "reasonable" and "non-cursory." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009). A consumer may sue a furnisher and recover damages if the furnisher willfully or negligently violated FCRA. 15 U.S.C. §§ 1681n, 1681o; see Syed v. M-I, LLC, 853 F.3d 492, 503 (9th Cir. 2017).

In this respect, "a furnisher's duties resemble those of a credit reporting agency, which can also be liable for failing to 'follow reasonable procedures to assure maximum possible accuracy' of information on a credit report." Gross, 33 F.4th at 1251, quoting 15 U.S.C. § 1681e(b); see also 15 U.S.C. §§ 1681n, 1681o. In such lawsuits, the Ninth Circuit has stated that before a court considers the reasonableness of the agency's procedures, the consumer must make a "prima facie showing" of inaccuracy in the agency's reporting. Gross, 33 F.4th at 1251, citing Shaw v.

1  Experian Info. Sols., Inc., 891 F.3d 749, 756 (9th Cir. 2018). In Gross, the Ninth Circuit discussed
2  that "[t]his order of proof makes sense: if there is no inaccuracy, then the reasonableness of the
3  investigation is not in play. On the flip side, if there is an inaccuracy, to succeed, the plaintiff must
4  establish that the investigation was unreasonable." Id. The Court then held that FCRA lawsuits
5  are cognizable against furnishers. Id., citing Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1313
6  (11th Cir. 2018); Chiang v. Verizon New Eng. Inc., 595 F.3d 26, 37 (1st Cir. 2010). "Just as in a
7  lawsuit against a credit reporting agency, to prevail on a FCRA claim against a furnisher, a
8  consumer must make a prima facie showing that the furnisher's report was inaccurate." Id.

9        Here, Plaintiff alleges that Westlake supplied information about Plaintiff's debts to the
10  national credit reporting agencies, which would make it a "furnisher" under FCRA and its
11  implementing regulations. 15 U.S.C. § 1681i(a); 12 C.F.R. § 1022.41(c) (defining "furnisher").
12  However, the Court does not find that Plaintiff has stated a prima facie showing of any inaccuracy
13  in Westlake's reporting. To begin, Plaintiff has included no allegations regarding the contract
14  details between Plaintiff and Westlake (or included the contract for incorporation). Thus, the
15  Court is unable to determine the most basic of terms of the contract and what a breach would
16  trigger. Moreover, Plaintiff has not included any allegations of how he came to be in arrears and
17  whether Westlake gave him notice of such. Without this information, the Court is unable to
18  determine whether Westlake's actions were inaccurate. As stated, the complaint seemingly relies
19  on circular logic that simply because Westlake reported late-payments and an increased debt that
20  such reporting must have been inaccurate—without giving the Court any means or measure to
21  assess this. The Court is cognizant that Plaintiff need only allege a prima facie showing, but even
22  taking all allegations in Plaintiff's favor, the Court finds that Plaintiff has failed to state an FCRA
23  claim. The Court will give Plaintiff leave to amend.

24       **B.**    **Fair Debt Collection Practices Act**

25        Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt
26  collectors" in order to "protect consumers." 15 U.S.C. § 1692(e). "The FDCPA pursues [this
27  purpose] by imposing affirmative requirements on debt collectors and prohibiting a range of debt-
28  collection practices." Rotkiske v. Klemm, 589 U.S. 8, 10 (2019), citing 15 U.S.C. §§ 1692b-

1692j.  The FDCPA prohibits debt collectors from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  . Debt collectors are strictly liable for FDCPA violations, Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010), and a debt collector who violates the FDCPA is liable for actual damages, attorney's fees and costs, and additional damages not to exceed $1,000 per violation.  15 U.S.C. § 1692k.  To prevail on a claim under the FDCPA, a plaintiff must establish that a debt collector, as defined in § 1692a(6), has failed to comply with a provision of the FDCPA.

In general, the FDCPA prohibits harassment and abuse, false and misleading information, and other unfair practices.  Here, Plaintiff offers that Westlake and Paramount mischaracterized his account status, refused lawful tender, inflated his account balance, and leveraged repossession threats.  Even assuming Westlake and Paramount are debt collectors, the Court finds that Plaintiff has failed to state a claim.  Beginning with Paramount, the only allegations relating to Paramount are regarding its repossession of Plaintiff's vehicle followed by a redemption process.  There are no allegations that Paramount was involved with Plaintiff's account with Westlake or involved with 'leveraging' the repossession.

Regarding Westlake, the Court finds that Plaintiff's allegations fail to state a claim for substantially similar reasons as Plaintiff's FCRA claim.  There are not sufficient allegations for the Court to plausibly view that Westlake mischaracterized Plaintiff's account status—again, the contract between Plaintiff and Westlake appears to be critical in this case and has not been included.  Without knowing the terms of their agreement, the Court is unable to determine whether Westlake engaged in an unfair characterization, was allowed to limit how it accepts payments, was allowed to assess administrative fees, and followed an agreed to repossession term.

Plaintiff has not sufficiently stated a FCDPA claim.  The Court will grant Plaintiff leave to amend.

### C. Truth in Lending Act (Regulation Z)

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid

the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601.  TILA entrusts the Federal Reserve Board with implementation of the Act, and the agency has imposed "even more precise" disclosure requirements through Regulation Z.  Virachack v. Univ. Ford, 410 F.3d 579, 581 (9th Cir. 2005)

Plaintiff has brought a generalized TILA Regulation Z claim related to disclosures, which must be made clearly and conspicuously before consummation on the contract or a separate disclosure statement.  (ECF No. 13, p. 40.)  It appears Plaintiff also takes issue with finance charges, APR, and the late-payment, the prepayment, and security-interest terms.  (Id.)  Though there is possibly a TILA claim even with Plaintiff's broad allegations, the Court is again unable to evaluate such a claim without the contract, or exact terms, presented to the Court.

Accordingly, the Court finds that Plaintiff has failed to state a claim.  As with Plaintiff's other claims, the Court will grant Plaintiff leave to amend.  Should Plaintiff do so, the Court observes that including the relevant contract appears to be essential to Plaintiff's claims.

**D.    42 U.S.C. § 1983**

Plaintiff brings a procedural due process claim through 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff has sued two private parties, Westlake Financial Services, Inc. and Paramount Recovery Services, LLC.  However, a claim brought through Section 1983 requires allegations that a state actor violated a right secured by the Constitution or laws of the United States.  Civil Rights Cases, 109 U.S. 3, 11 (1883).  "Individual invasion of individual rights is not the subject-matter of the [Fourteenth] amendment."  Id.  Plaintiff attempts to plead around this issue by directing the Court to a form email he received from Paramount that stated that Plaintiff should bring a police receipt and picture identification when attending his redemption appointment.  Based on this fact alone, Plaintiff attempts to invoke the state actor doctrine through a private party.  To be sure, private actors may at times be found to be state actors.  See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288, 296 (2001) (discussing the intersection of the

1  state actor doctrine and private entities).³ However, the only fact Plaintiff has alleged in support of
2  state action is that Paramount sent him a form email that told Plaintiff to bring a police receipt to
3  his redemption appointment. Even accepting Plaintiff's suggestion that this email demonstrated
4  that Paramount contacted the Fresno Police Department, that allegation itself falls short of
5  demonstrating that Paramount was subject to the coercive power of the State, that Paramount was
6  acting as a willful participant in joint activity with the State, that the State significantly encouraged
7  Paramount, that Paramount was essentially an agency of the State or was delegated a public
8  function, or that Paramount was entwined with governmental policies.

   Because Plaintiff has failed to plead a state actor deprived him of a constitutionally or
   statutorily guaranteed federal right, Plaintiff's § 1983 claim fails to state a claim.

   **E.    State Law Claims**

   Federal courts are courts of limited jurisdiction. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Federal courts can adjudicate only cases that the Constitution or Congress authorize them to adjudicate: those cases involving diversity of citizenship (where the parties are from diverse states), or a federal question, or those cases to which the United States is a party. See id. Federal courts are presumptively without jurisdiction over civil cases and the burden of establishing the contrary rests upon the party asserting jurisdiction. Id. at 377.

---

³ We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," Blum, 457 U.S., at 1004, 102 S. Ct. 2777, when the State provides "significant encouragement, either overt or covert," ibid., or when a private actor operates as a "willful participant in joint activity with the State or its agents," Lugar, supra, at 941, 102 S. Ct. 2744 (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," Pennsylvania v. Board of Directors of City Trusts of Philadelphia, 353 U.S. 230, 231 (1957) (per curiam), when it has been delegated a public function by the State, cf., e.g., West v. Atkins, supra, at 56, 108 S. Ct. 2250; Edmonson v. Leesville Concrete Co., 500 U.S. 614, 627-28 (1991), when it is "entwined with governmental policies," or when government is "entwined in [its] management or control," Evans v. Newton, 382 U.S. 296, 299, 301 (1966).

531 U.S. at 296.

As relevant here, the operative complaint is premised on federal question jurisdiction. (ECF No. 13, p. 8.) In cases premised on federal question jurisdiction, a federal district court may exercise supplemental jurisdiction over related-state law claims. However, when there is no basis for federal question jurisdiction, the district court lack subject-matter jurisdiction and may not reach state-law claims independently. Here, the Court has found that Plaintiff has failed to state a federal claim, and therefore, the Court will, in an exercise of judicial economy, decline to analyze Plaintiff's state-law claims at this time.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed herein, Plaintiff has failed to state any cognizable federal claims for relief and will be granted leave—**for a final time**—to file a third amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). If Plaintiff chooses to file a third amended complaint, that complaint can be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights or violations of state law. Iqbal, 556 U.S. at 678-79. Importantly, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in her amended complaint.

Finally, Plaintiff is informed that the Court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015).

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall send Plaintiff a complaint for civil case form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a third amended complaint curing the deficiencies identified by the Court in this

order. **This shall be Plaintiff's final opportunity for leave to amend**;

3. The third amended complaint, including attachments, shall not exceed twenty-five (25) pages in length. <u>Should Plaintiff fail to comply with this page limitation, the Court will not review the third amended complaint beyond page 25</u>; and

4. <u>If Plaintiff fails to file a third amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order.</u>

IT IS SO ORDERED.

Dated: **October 15, 2025**

STANLEY A. BOONE
United States Magistrate Judge